## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RAY TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION<br><br>No. 03-2436-CM |

## MEMORANDUM AND ORDER

Plaintiff Ray Taylor brought this action regarding a claim for disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 410 *et seq*. and §§ 1382 *et seq*.  Plaintiff objects to defendant the Commissioner of Social Security's finding that he is not disabled.  Plaintiff contends that he has established through his testimony and credible medical evidence that he is disabled within the meaning of the SSA, and that the Commissioner's decision denying him benefits is not supported by substantial evidence.  This matter comes before the court on plaintiff's Social Security Brief (Doc. 15).  Plaintiff requests that the court reverse the Commissioner's decision and award him benefits.

### I.  Facts

Plaintiff originally filed his claim for disability insurance benefits on October 3, 2000. Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested and received a hearing before an Administrative Law Judge (ALJ) on April 15, 2003.  During the hearing, plaintiff testified that he was born on February 21, 1963.  Plaintiff completed the 9th grade and has had training as a heavy equipment

operator since high school. However, plaintiff's actual work experience is as a heavy laborer and a forklift operator. Plaintiff has worked in the past as a laborer, stone worker, yard man, and coupon dropper.

Plaintiff testified that he injured his right shoulder and that he experiences pain from that injury. Plaintiff alleges disability due to back pain. Plaintiff testified that he is unable to work because he has pain in his right shoulder, neck, right arm, both knees, thoracic spine, and his low back. Plaintiff stated that he has to lay down about eight hours a day to gain relief from his pain; that he has loss of grip strength and is unable to lift more than ten pounds, unable to sit more than a half hour without experiencing pain and unable to stand for more than five minutes without experiencing pain. At the time of the hearing, plaintiff was using naproxen for pain relief.

Plaintiff was initially injured on December 17, 1997, received medical treatment, and was released by his doctor after reaching medical stability. Plaintiff alleges that he has been disabled since May 15, 1999, which is when he stopped working full-time due to an on-the-job injury. Plaintiff returned to work for one month in July 1999 as a forklift operator.

The medical evidence in the case showed that magnetic resonance imaging (MRI) examination of plaintiff's cervical, thoracic, and lumbar spine in September 1998 showed only mild degenerative changes at L4-5 and L5-S1 with no disk herniation. A December 8, 1999, examination showed that plaintiff's reflexes, motor, and sensory functioning were normal. Straight leg raising was negative while seated and positive for back pain at 60 degrees. Plaintiff was able to bend forward and touch the floor. His hip range of motion was painless and full. X-ray examination of plaintiff's lumbar spine showed no evidence of tumor, infection, spondylolisthesis or instability. X-ray examination of plaintiff's hips

and sacroiliac joints was also normal.  Plaintiff was using ibuprofen for pain relief.  Plaintiff's doctor stated that plaintiff was capable of light to medium work in December 1999.

Plaintiff was diagnosed on October 10, 2000, as having back pain.  An examination on November 8, 2000, showed normal motor function, reflexes, and sensation.  Straight leg raising was to greater than 90 degrees bilaterally.  On November 11, 2000, plaintiff had full dorsolumbar spine range of motion except for reduced extension.  He was able to straight leg raise to 90 degrees while reclined, and 100 degrees while sitting, without paraspinous muscle spasm.  Plaintiff's motor function, sensation, and reflexes were normal.  He was able to heel and toe walk and had no difficulty squatting or arising from the seated position.   X-ray examination of his left knee was normal.

On February 16, 2001, plaintiff had full flexion, extension, and lateral bending of his spine. He had full strength and straight leg raising was negative.  X-ray examination of his spine showed only mild degenerative disease with normal flexion and extension.  Plaintiff had been treated with pain medication, physical therapy and epidural injections but continued to complain of back pain.  On March 8, 2001, plaintiff was sent to physical therapy due to low back strain and neck strain.

An examination on March 19, 2001, revealed negative straight leg raising, full motor strength, and normal reflexes.  Plaintiff had no sensory deficits, and his gait was normal.  There were no trigger points elicited on examination.  On May 30, 2001, plaintiff was able to straight leg raise to 90 degrees in both legs. He had "mild" lumbosacral spasm with no sacroiliac joint tenderness or tenderness of the pelvic area. Plaintiff had no neurological deficits in his legs.

Plaintiff continued to work after he allegedly became disabled in May 1999.  Plaintiff earned more than $6,500 in 2000 and $3,800 in 2001.

On June 26, 2003, the ALJ issued an unfavorable decision denying plaintiff's claim for disability

insurance benefits.  The ALJ made the following findings:

1. Claimant meets the nondisability requirements for a period of disability and Disability Insurance benefits set forth in Section 216(i) of the Social security Act and is insured for benefits through the date of this decision.

2. Claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. Claimant has the following "severe" impairments: lumbosacral strain; and midborderline intellectual functioning.

4. Claimant's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of this decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. Claimant retains the residual functional capacity to lift and-or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 30 minutes at one time for up to four hours in an eight hour day; sit 30 minutes at one time for up to four hours in an eight hour day; cannot perform work on ladders or scaffolds, and can only occasionally balance, stoop, kneel, crouch, crawl and climb stairs.

8. Claimant is unable to perform any of his past relevant work (CFR §§ 404.1565 and 416.965). This finding is based on vocational expert testimony.

9. Claimant is a "younger" individual (20 CFR §§ 404.1563 and 416. 963).

10. Claimant has a "limited" education (20 CFR §§ 404.1564 and 416.964).

11. Claimant has no transferable skills from any past relevant work (CFR §§ 404.1568 and 416. 968).  This finding is based on vocational expert testimony.

12. considering claimant's vocational profile and above-described residual functional capacity, he can perform jobs that exist in significant numbers in the national economy.  This finding is based on vocational expert testimony.

13. Claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

Plaintiff filed a timely request with the Appeals Council to review the decision of the ALJ. On August 22, 2003, the Appeals Council denied review of the ALJ's decision; thus the ALJ's decision stands as the final decision of the Commissioner.

## II.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the correct legal standards were applied and whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003). The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

**III.    Discussion**

Plaintiff bears the burden of proving disability under the SSA.  *See Ray v. Bowen*, 865 F.2d 222,

224 (10th Cir. 1989).  The SSA defines "disability" as the inability to engage in any substantial gainful activity

for at least 12 months due to a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(1)(A).  To

determine disability, the Commissioner uses a five-step sequential evaluation.  The Commissioner

determines: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the

claimant has a severe impairment, one that significantly limits the claimant's physical or mental ability to

perform basic work activities; (3) whether the claimant has an impairment that meets or equals a

presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to

age, education, and work experience); (4) whether the claimant has the residual functional capacity to

perform his or her past relevant work; and (5) whether the claimant can do any kind of work.  *See* 20

C.F.R. §§ 404.1520, 416.920.  If a claimant satisfies steps one, two and three, he will automatically be

found disabled.  If a claimant satisfies steps one and two, but not three, he must satisfy step four.  If step four

is satisfied, the burden shifts to the Commissioner to prove that there are other jobs in the national economy

that the claimant can perform.  *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

In this case, the ALJ denied benefits at step five, relying on the testimony of a vocational expert in

finding that plaintiff is capable of performing other jobs, such as a bench assembler, light packer, and

machine operator, that exist in significant numbers in the national economy.  In making this determination, the

ALJ found that plaintiff's allegations regarding his limitations were not totally credible and that he had the

residual functional capacity to lift and-or carry twenty pounds occasionally and ten pounds frequently; stand

and/or walk thirty minutes at one time for up to four hours in an eight hour day; and sit thirty minutes at one time for up to four hours in an eight hour day.

Plaintiff claims that the ALJ failed, in his decision, to explain whether the vocational expert's explanation for conflict between jobs she said plaintiff could perform and the Dictionary of Occupational Titles (DOT) was reasonable, and that the ALJ also failed to explain how the conflicts with the DOT were resolved.  Plaintiff thus claims that the ALJ's decision that plaintiff is not disabled is not supported by substantial evidence in the record and should be reversed.  Plaintiff contends that he has established, through his testimony and the credible medical evidence, that his impairments render him disabled and unable to engage in substantial gainful activity.

The Commissioner contends that the ALJ properly evaluated plaintiff's credibility and properly determined that plaintiff could perform other jobs in the national economy.  The issue before this court is whether the ALJ's decision is supported by substantial evidence in the record.

### A.    Credibility Determination

In evaluating the ALJ's credibility determination of a plaintiff who has alleged disabling pain, the court considers:

> 1) whether Claimant established a pain-producing impairment by objective medical evidence; 2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992)).  "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'"  *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

The court therefore examines whether there exists substantial evidence in the record to support the ALJ's credibility determination.  Great deference should be given to the ALJ's conclusion as to credibility. *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987).

In assessing plaintiff's credibility, the ALJ found that several factors reduced plaintiff's credibility, including: (1) the objective medical evidence was inconsistent with plaintiff's subjective complaints; (2) plaintiff needed only mild or over-the-counter medication to control his symptoms; (3) no medical evidence existed to corroborate plaintiff's claims of pain and limitation – including that he needed to lay down for eight hours each day; and (4) plaintiff continued to work after the date he allegedly became disabled.  The ALJ specifically noted that there is no medical opinion that plaintiff is disabled.

Plaintiff maintains that the medical evidence supports his allegations of disabling symptoms.  The court concludes that the evidence in the record as it is set forth above supports the ALJ's finding regarding a lack of objective medical evidence to support plaintiff's allegations of pain.  Moreover, when determining the credibility of pain testimony, the ALJ should consider the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

It is undisputed that the ALJ noted other evidence, in addition to his review of the medical evidence and records, to support his determination that plaintiff was not credible to the extent he claimed he was

-8-

disabled.  The ALJ noted that plaintiff needed only mild or over-the-counter medication to control his symptoms and that plaintiff worked after the alleged disability onset date.

The ALJ correctly determined that plaintiff's work activity in 2000 and 2001 did not constitute substantial gainful activity.  However, in making a credibility determination, the ALJ is entitled to consider the extent of a claimant's daily activities, including work.  *Kepler*, 68 F.3d at 391.

The ALJ properly relied on these factors in determining that plaintiff's subjective complaints of pain were not credible.  Upon consideration of the ALJ's credibility determination, plaintiff's subjective complaints, his use of only mild medication to control his symptoms, the fact that he worked after the alleged date of disability, and in light of the objective medical evidence, the court concludes these factors weigh against a finding of disability.  Because credibility determinations are ultimately left to the ALJ when supported by substantial evidence, and the evidence on the record as a whole supports the ALJ's determination, the court affirms the ALJ's credibility determination.

### B.        Assessment of Plaintiff's Ability to Perform Jobs in the National Economy

After making the credibility determination, the ALJ then found that plaintiff could not continue to perform his relevant past work as a stone cutter, but, based on a vocational expert's testimony, found that plaintiff could make a vocational adjustment to other work in the national economy.  The ALJ specifically determined that plaintiff had a residual functional capacity to work at light, unskilled jobs with sit/stand options such as a bench assembler, light packer, and machine operator – all jobs that exist in Kansas and in the national economy in significant numbers.  The ALJ therefore found that plaintiff was not disabled within the meaning of the SSA.

Plaintiff contends that the ALJ failed to resolve a conflict between the DOT and the vocational expert's testimony in determining that plaintiff could perform other jobs.  As part of his hypothetical question to the vocational expert, the ALJ asked the vocational expert:

> . . . to assume that this individual can lift and carry 20 pounds on an occasional basis, ten pounds frequently, can stand and walk for 30 minutes at a time for a total of four hours in an eight-hour day, can sit for 30 minutes at a time for a total of four hours in and eight-hour day.  This individual is prohibited from use of ladders or scaffolds, can only occasionally balance, stoop, kneel, crouch, crawl, or use stairs. Could a person with these limitations perform any of the past relevant work of this Claimant?

(T. 71).  The vocational expert said that a person with these limitations could not perform any of plaintiff's past relevant work, but went on to the identify the positions of bench assembler, light packer, and light machine operator that the hypothetical claimant could perform, given these limitations, and that these jobs existed in significant number in the national economy.  The ALJ then asked the vocational expert in what ways her testimony varied from the DOT and related publications.  The vocational expert responded:

> Well, some jobs, for example, forklift operator, the DOT will always classify it at the medium exertional level.  However, it depends on exactly where the individual is working, they may also be required to manually shift some material as well.
>
> . . .
>
> And so it will move into a heavier category.

(T. 77).  The ALJ did not ask any further questions of the vocational expert.

Plaintiff claims that the explanation provided by the vocational expert is unclear and that the ALJ did not make a detailed inquiry into the discrepancies and how the vocational expert resolved them.

-10-

Testimony by a vocational expert that a claimant retains the residual capacity to perform numerous types of work activity has been accepted by the courts as reliable evidence on the question of employability. *See Johnson v. Finch*, 437 F.2d 1321, 1324 (10th Cir. 1971).  Plaintiff's argument seems to rest on an assumption that the jobs that the vocational expert said plaintiff could perform would require heavy exertion under the DOT classification, when the ALJ had found that plaintiff was limited to performing jobs that required only light exertion.  Thus, the vocational expert's testimony creates a conflict with the DOT that was unexamined by the ALJ.

"[B]efore an ALJ may rely on evidence from a vocational expert (VE) to support a finding of nondisability at step five, the ALJ 'must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.'"  *Bivines v. Barnhart*, 2004 WL 1771595, at *3 (D. Kan. Aug. 6, 2004) (citing *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)).

However, in this case, while the testimony of the vocational expert is confusing, the vocational expert did not state that a conflict exists between the DOT and her testimony that plaintiff could perform the bench assembler, light packer and light machine operator jobs.  Rather, the vocational expert used the example of the forklift operator, one of plaintiff's past jobs, as an example of how a job can be performed at a heavy exertion level in the workplace, but be classified in the DOT as light work.  *See* DOT #921.683-050.

Moreover, as the Commissioner points out, the ALJ did not rely on plaintiff's past work to find that plaintiff was not disabled.  In fact, the ALJ assumed that plaintiff retained a residual functional capacity for only light work.  The Commissioner contends that at least one of the jobs the vocational expert stated that plaintiff could perform – bench assembler – is performed at the light exertional level as it is defined in the

-11-

DOT.  *See* DOT #706.684-022.  Moreover, the bench assembler job exists in significant numbers in the national economy.  The Commissioner further points out that the jobs of light packer and light machine operator include a range of positions performed at the light exertional level – including inspector-packer, DOT #784.687-042, cotton-roll packer, DOT # 920.685-054, packer-fuser, DOT #737.687-094, cigar packer, DOT #790.687-014, wing-mailer machine operator, DOT #208.685-034, trimmer machine operator, DOT #781.682-010, and wire-wrapping machine operator, DOT #726.682-014.  None of the descriptions of these jobs require activities in excess of the ALJ's residual functional capacity determination, and all of them fall within the type of jobs that the vocational expert relied upon in giving her testimony.

The court thus finds that the ALJ properly relied on the testimony of the vocational expert to find that plaintiff could perform other jobs that exist in the state and national economy.  Moreover, no conflict exists between the DOT descriptions of the positions on which the vocational expert relied and the residual functional capacity of plaintiff.  The court finds that the ALJ's determination that plaintiff could perform jobs that exist in significant numbers in the national economy is supported by substantial evidence.

In sum, the step-five burden of proving that there are sufficient jobs in the national economy for a hypothetical person with plaintiff's impairments has been met.  There is no reversible error in this aspect of the ALJ's decision and, as such, the court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that plaintiff's motion for judgment (Doc. 15) is denied and defendant's decision denying plaintiff disability benefits is affirmed.

Dated this 25th day of March 2005, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**

-12-

**United States District Judge**